Cornelia Louise OWENS

v.

FIRST CITY NATIONAL BANK
OF BEAUMONT.

No. B–88–1139–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

May 26, 1989.

**228**

Steve Carlton and Louis Dugas, Orange, Tex., for plaintiff.

W. Carl Jordan and John M. Maciejczyk, Vinson & Elkins, Houston, Tex., for defendant.

## OPINION AND ORDER

SCHELL, District Judge.

Plaintiff, Cornelia Louise Owens, sued Defendant, First City National Bank of Beaumont (FCNB), in the 60th District Court of Jefferson County, Texas, alleging malicious prosecution, intentional infliction of emotional distress, invasion of privacy and slander. FCNB timely removed the case to this federal court on the basis that the malicious prosecution claim allegedly

1. 18 U.S.C. § 656 (theft, embezzlement or misapplication by bank officer or employee).

2. 12 C.F.R. § 21.11 (1988) (reporting requirements imposed by the Treasury Department on national banks in cases such as the mysterious disappearance or unexplained shortages of

depends upon the interpretation of criminal laws of the United States [1] and laws which regulate conduct of national banks.[2] Owens then moved this court to remand, arguing that the claims are all state law derived and that no federal question appears in her complaint to give this court subject matter jurisdiction. For the following reasons, this court agrees with Ms. Owens, and her motion to remand is hereby GRANTED.

## FACTS AND PARTIES' CONTENTIONS

In early 1987, after serving as a FCNB employee for some 8½ years, Owens found herself the subject of an investigation by the United States Attorney's office. FCNB had terminated her on February 8, 1987, and, pursuant to 12 C.F.R. § 21.11, reported to the Federal Bureau of Investigation (F.B.I) facts centered around the disappearance of bank funds as required by law. On the basis of these reports and the F.B.I. investigation, a grand jury indicted Owens for embezzlement, and she was arraigned on June 28, 1988. She was tried before a jury and acquitted on September 30, 1988.[3]

Owens filed this lawsuit in November of 1988 alleging in her malicious prosecution claim that FCNB, without probable cause and with malice, gave the F.B.I. an incomplete statement of facts concerning her role in the disappearance of funds from the bank. She further alleged that bank employees, acting as bank agents in the course and scope of employment and because of ill will toward her and with a desire to oppress her, made statements to third parties that she had stolen money from the bank. Owens alleges that the bank acted without probable cause and without a good faith belief that she was guilty of the crime with which she was charged.

FCNB contends that 12 C.F.R. § 21.11 mandates a report to the Comptroller of Currency any time a national bank sustains

funds, theft, embezzlement, check kiting or other known or suspected criminal activity involving bank funds).

3. *United States of America v. Owens,* No. B–88–49–CR, slip op. (E.D.Tex. Sept. 30, 1988).

a mysterious loss of funds or suspects embezzlement or theft, and that the investigation that led to Owens' indictment directly resulted from this federally required report. Further, since Owens' complaint alleges that FCNB initiated the investigation without probable cause and with malice, these became elements of her malicious prosecution claim. Therefore, since the issue of whether probable cause existed for the prosecution of the federal offense is a question of federal law, and since the bank's actions bearing on the existence of probable cause and malice must be judged within the context of the federally imposed reporting requirements, Owens' complaint states a claim under federal law and federal question jurisdiction exists.[4]

## APPLICABLE LAW

For a state claim to be properly removable, it must be one which could have been filed in federal court originally.[5] In other words, in the vast majority of cases, removal jurisdiction is equivalent to original jurisdiction. In non-diversity cases such as this one, subject matter jurisdiction must be founded upon a federal question.[6] Further, for the case to be one "arising under" the Constitution and laws of the United States, the basis of the federal claim must appear in the plaintiff's complaint. A defense based upon a federal claim, even if anticipated and answered in plaintiff's complaint, cannot serve as the basis of federal question jurisdiction. This "well-pleaded complaint" rule allows the plaintiff to control his case by relying exclusively on state law claims and thereby avoiding federal jurisdiction.[7]

Two "arising under" circumstances may be possible, depending upon the particular case. Most cases will fit within Justice Holmes' adage that a "suit arises under the law that creates the cause of action."[8] In this case, however, neither party contends that Owens' cause of action is granted by the federal law involved. The statute is a criminal law permitting the government to prosecute theft and embezzlement from federally chartered banks. Likewise, the Comptroller's regulations merely recognize certain circumstances to which the F.B.I.'s attention shall be called and establishes a reporting scheme therefor.

A few cases, however, present the "litigation-provoking problem" wherein a federal issue is present in a state-created claim.[9] Because of the philosophy underlying the well-pleaded complaint rule, though, the Supreme Court has forcefully indicated a need for restraint by federal courts in accepting jurisdiction on this latter basis.[10] This is true in spite of the countervailing "artful pleading" rule that prevents a plaintiff from defeating federal

---

**4.** *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *and* 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under ... laws of the United States shall be removable without regard to the citizenship or residence of the parties.")

**5.** *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987); and 28 U.S.C. § 1441(b).

**6.** *Id.; see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987).

**7.** *Id.* 107 S.Ct. at 2429–30, *citing Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936), and *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 12, 103 S.Ct. 2841, 2847–48, 77 L.Ed.2d 420 (1983).

**8.** *Franchise Tax Board,* 463 U.S. at 8–9, 103 S.Ct. at 2845–46, *citing American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).

**9.** *Merrill Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 3233, 92 L.Ed. 2d 650 (1986), *citing Textile Workers v. Lincoln Mills,* 353 U.S. 448, 470, 77 S.Ct. 912, 928, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting). *See also, Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 199, 41 S.Ct. 243, 245, 65 L.Ed. 577 (1921) (where plaintiff's right to relief depends upon construction or application of the Constitution or laws of the United States, and that federal claim is more than just colorable, but includes a reasonable foundation, jurisdiction lies in federal court).

**10.** *Merrill Dow,* 106 S.Ct. at 3233–34.

jurisdiction by casting his necessarily federal claim in solely state law terms.[11]

Against such mandate of restraint, this court finds few categories of cases unequivocally recognized as removable because state claims therein contained elements of federal issues.[12] As to the category of Owens' case, that of interpretation and construction of elements of federal criminal laws within the context of the state claims, there appears to be surprisingly little history and none of it is controlling or even undisputed. Defendant refers this court to only two cases where removal jurisdiction was confirmed, both of which pre-dated much of the foregoing authorities defining the scope of removability.

In *Rury v. Gandy*,[13] the defendants allegedly caused plaintiff to be criminally prosecuted in federal court and testified at his trial wherein plaintiff was acquitted. The court found plaintiff's complaint to have stated a federal claim in the nature of contempt of court, and public policy dictated that those who had been witnesses for the government should not be wrongfully made to suffer therefor. Aside from the fact that it is not perfectly obvious to this court why such vindication of federal interests cannot be trusted to state courts, throughout the six decades since *Rury*, the case was criticized by the only appellate court to have acknowledged it[14] and, to date, has been cited with approval by only two cases[15] and distinguished by another.[16] Further, *Rury* involved a bankruptcy trustee and his attorney as defendants, who took no actions in response to federal regulations promulgated under federal criminal statutes, and therefore is not directly on point with the case before this court today.

■ The other case cited by defendant which falls in the same category as Owens' claim is *Eighmy v. Poucher*,[17] a frequently cited case which confirmed federal jurisdiction upon removal when the plaintiff sued a United States district attorney who had caused plaintiff to be indicted, arrested and tried in federal court for violation of pension laws. Plaintiff was acquitted and brought a malicious prosecution action in state court, and the defendant removed the case. The court denied remand because of the status of the defendant as a United States official and the fact that the case would draw into question federal laws, federal practice and procedure, validity of a

---

11. *See Avco Corp. v. Aero Lodge No. 735, International Association of Machinists & Aerospace Workers*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (Though plaintiff's employee claimed only a valid contract with defendant union, case necessarily arose under § 301 of the Labor Management Relations Act and was removable under preemption doctrine); and *Caterpillar*, 107 S.Ct. at 2426. *See also* 14A C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 3722, at 279 (1985) (hereinafter "Wright & Miller") (A federal court treats plaintiff's complaint with greater skepticism on removal than for original jurisdiction, adopting an uncharacteristic posture of looking beyond the letter of the complaint to ensure access to the federal forum where defendant is so entitled).

12. See cases cited at 14A Wright & Miller § 3722, at 291 nn. 89–95 (including public lands, interstate commerce, labor relations, trademark and patent).

13. 12 F.2d 620 (E.D.Wash.1926)

14. "We are not persuaded, as seems to have been held in *Rury v. Gandy* ... that a District Court of the United States has original jurisdiction of a suit merely because the acts of defendant complained of took place in a proceeding in a court of the United States." *Thompson v. Standard Oil Co. of New Jersey*, 67 F.2d 644 (4th Cir.1933) (libel action not removable even though based on allegations in defendant's answer in a previous federal court proceeding).

15. *Nationwide Charters and Conventions, Inc., v. Garber*, 254 F.Supp. 85 (D.Mass.1966) (prior process against plaintiffs by defendant airline company involved Federal Aviation Act; earlier case and extant counterclaim therein remained pending, making instant case for abuse of process inextricably bound up with it, thereby permitting removal); *Thompson v. Standard Oil Co. of New Jersey*, 60 F.2d 162, 164 (E.D.S.C.1931), *rev'd*, 67 F.2d 644 (4th Cir.1933).

16. *Voors v. National Women's Health Organization, Inc.*, 611 F.Supp 203, 207 (N.D.Ind.1985) (allegations that defendant's initiation of prior proceedings against plaintiffs was motivated by wrongful purpose of abridging plaintiff's constitutional rights of free speech and assembly did not state a claim for such abridgement, but instead stated a claim for malicious prosecution under state law, and was not removable).

17. 83 F. 855 (E.D.N.Y.1898)

federal grand jury and the power and authority of federal execution and judicial officers. Subsequent cases citing it have construed *Eighmy* as standing for the proposition that removal was proper because the defendant was being sued for alleged torts committed while acting in the course and scope of his official capacity as a federal official.[18] In Owens' case, however, the bank and bank officials cannot be regarded as federal officials for purposes of federal jurisdiction simply because of the federal bank charter,[19] and they have been sued in their individual and employment capacities under solely state law claims.

Thus, FCNB's only persuasive precedent not only predates much of the Supreme Court's "arising under" mandates, *supra*, but in the case of *Rury*, is not very persuasive to this court or others, and in the case of *Eighmy* is virtually inapposite. A brief but careful examination of other cases cited by FCNB shows that they either turned upon factors not present in Owens' case,[20] or, in spite of FCNB'S citing of them for the proposition that "numerous federal courts have frequently ... exercised jurisdiction under § 1331 ...," [21] in fact declined to accept jurisdiction.[22]

## SUBSTANTIALITY OF FEDERAL ELEMENT

■ The real test of whether Owens' malicious prosecution claim arises under federal law requires determining whether or not a right or immunity incorporated within her state law claim "will be supported if ... laws of the United States are given one construction or effect, and de-

18. *See, e.g., Bradford v. Harding,* 108 F.Supp. 338, 340 (E.D.N.Y.1952) (plaintiff who sued United States Judge, two United States Attorneys, four other federal officials for assault and false imprisonment had stated a cause of action under federal law in spite of plaintiff's failure to allege defendants' official capacities as federal officials; court could take judicial notice thereof).

19. At one time, such jurisdiction did exist; *see Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). Because of the burden on federal courts, however, Congress cut back and eventually eliminated it. Thus, for suits by or against federally chartered banks (a fortiori, their employees acting in the course and scope of their employment), a separate federal question must arise from the plaintiff's complaint. *See* 13B Wright & Miller § 3571, at 176. *See also, Golar v. Daniels & Bell, Inc.,* 533 F.Supp. 1021 (S.D.N.Y.1982) (where directors and officers were sued under state law for allegedly thwarting the will of bank board of directors, court searched complaint in vain for federal question arising under the National Bank Act, 12 U.S.C. §§ 24, 51(b)(a) & 71, and the Securities Exchange Act of 1934, 15 U.S.C. § 78J(b), and finding none, concluded remand was required.).

20. *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921) (issues necessarily required determining whether federal bonds had been issued according to federal law); *Nationwide Charters,* 254 F.Supp. at 87 (plaintiff's claims mirrored extant counterclaims in pending case in federal court); *Olguin v. Inspiration Consolidated Copper Co.,* 740 F.2d 1468 (9th Cir.1984) (wrongful discharge covered by federal labor law—the "complete preemption" exception to the well-pleaded complaint rule—*see Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486 (2d Cir.1968) (federal statutory scheme regulating interstate communication incorporates congressional policy requiring that duties and liabilities under contracts between providers and users of the service be determined according to federal rules).

21. Defendant's Response to Plaintiff's Motion to Remand, at 14.

22. *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963) (no cause of action, under 4th Amendment protection from unreasonable searches and seizures, for abuse of subpoena power by federal officer); *American Invs–Co Countryside v. Riverdale Bank,* 596 F.2d 211 (7th Cir.1979) (no right of a action under federal statute, and federal interest too speculative to invoke federal jurisdiction to interpret federal statute); *Hines v. Cenla Community Action Committee, Inc.,* 474 F.2d 1052 (5th Cir. 1973) (no federal jurisdiction just because plaintiff's right to sue is federally derived; plaintiff's claim must be founded on federal law); *Warrington Sewer Co. v. Tracy,* 463 F.2d 771 (3d Cir.1972) (bare allegation of 14th Amendment due process violation insufficient to confer federal jurisdiction); *T. B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir.1964) (even though instrument was recorded in Copyright Office, fact that dispute arose over rights to a copyright did not involve interpretation of the Copyright Act and therefore involved no federal question).

feated if they receive another."[23] The included right or immunity must be an essential element of her claim(s).[24] FCNB contends that her allegations of a lack of probable cause to accuse her of wrongdoing, motivated by FCNB employees' alleged malice toward her, are the essential elements of her claim that raise federal issues.

Any criminal prosecution or indictment must, by definition, include probable cause for its inception. The term itself, however, incorporates by its very nature a variety of circumstantial definitions subject to the judgment of the persons involved. It is for this reason that, under our Constitution, government officials (police and prosecutors) must get objective, disinterested agreement (from a magistrate and a grand jury, respectively) before wielding the power of that government against individuals who otherwise remain free of unwarranted intrusions into their personal lives. There is no such requirement on the part of private individuals or corporations under the Constitution. Instead, the law leaves to the parties their private remedies under civil causes of action to police their own privacy.

It is a different question to ask whether probable cause existed to prosecute Owens under the criminal statute than to ask whether there was "probable cause" on the part of bank employees to justify reporting to the F.B.I. that something was amiss. It is yet a different question to ask whether such bank employees suspected Owens to be involved in wrongdoing and whether such suspicion rose to the level of "probable cause". It does not require that this suspicion be coextensive with the probable cause which, having materialized after an investigation by the F.B.I. and the United States Attorney and subject to confirmation by the Grand Jury, would be required under the statute for indictment.

FCNB is correct that probable cause to indict under a federal statute is a federal question. Further, such probable cause is an element in a malicious prosecution claim against federal officials involved in that litigation. It does not follow logically, however, that the case must be conducted in federal court. Nor does it follow logically, because a criminal prosecution resulted based on the judgment of federal officials that probable cause existed therefor, that a suit against private citizens for setting that federal machinery in motion involves the same element of probable cause as does the criminal statute. To say this is to assume that the federal officials' action vindicates and justifies any malice and wrong doing on the part of the private citizens. It requires a leap of logic this court is unwilling to launch.

Further, the defendant bank officials are not police officers, federal or otherwise,[25] who are subject to the probable cause requirement contemplated by the 4th Amendment. Quite the contrary, they are private citizens who, like all of us, are expected, and in this instance mandated by the Comptroller's regulations, to report to authorities when confronted with wrongdoing they feel requires governmental attention. To require probable cause of a prosecutorial quality before permitting such a report is to require of such citizens that they remain silent unless they can be sure that their report will likely lead to prosecution. This places upon private citizens the same burden, mandated by the Constitution, that police officers themselves must carry. The Comptroller's regulations clearly do not contemplate such burden, and it is one this court will not levy.

Any number of criminal statute violations could have been uncovered during investigations by the F.B.I. and the United States Attorney, and probable cause to indict under each could be different. The

---

**23.** *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936).

**24.** *Id.*

**25.** It is far beyond the scope of and unnecessary to this opinion to engage in the seemingly endless debate over incorporation theories concerning the Bill of Rights and the 14th Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). *See also,* J. Nowak, R. Rotunda and J. Young, Constitutional Law, §§ 10.2–10.3 and § 11.5–11.7 (3d ed.1986).

probable cause required for prosecution under the criminal statute with which Owens was charged is a different "probable cause" than that necessarily contemplated by Owens in her complaint, and it is not an element of her malicious prosecution action against FCNB. It is at most a defense to her claim and, under *Gully*, cannot be considered by this court for jurisdiction purposes.

As to "malice," FCNB points to no caselaw, and this court has not unearthed any authority, supporting FCNB's proposition that the definition of malice is a federal question, even if FCNB is correct that Owens has made it an element in her causes of action under state law.

### CONCLUSION

For the foregoing reasons, FCNB's contention that Owens' well-pleaded complaint necessarily includes federal issues is without merit. This court therefore has no jurisdiction to hear Owens' case against FCNB, and remand is required.

SO ORDERED.